UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| CATHY RAYFORD, ) <br> ) <br> Plaintiff, ) <br> ) <br> VS. ) <br> ) <br> MICHAEL J. ASTRUE, Commissioner of ) <br> Social Security, ) <br> ) <br> Defendant. ) | CIVIL ACTION NO. <br><br> 4:10-CV-0174-G |

## MEMORANDUM OPINION AND ORDER

Before the court is Cathy Rayford ("Rayford")'s appeal of a final decision issued by the Commissioner of Social Security (the "Commissioner") denying her claims for disability insurance benefits and supplemental security income benefits under the Social Security Act ("SSA"). For the reasons set forth below, the decision is reversed and this case is remanded to the Administrative Law Judge ("ALJ") for further proceedings consistent with this opinion.

### I. BACKGROUND

#### A. Procedural Background

On March 17, 2006, Rayford applied for disability insurance and supplemental security income benefits alleging that she had become disabled on November 1, 2004.

Tr. 17, 18. Her applications were denied initially, Tr. 47-52, and again on reconsideration. Tr. 55-58. The ALJ held a hearing on April 18, 2008, and issued in opinion on May 30, 2008, finding Rayford not disabled. Tr. 14-24. Rayford's subsequent request for review was denied by the Appeals Council, Tr. 1-3, leaving the ALJ's decision to stand as the final decision of the Commissioner. Rayford then timely filed this action against the Commissioner. On June 2, 2010, the parties were directed to treat this case as an appeal. Order Directing Case to be Treated as an Appeal at 1 (docket entry 11). The appeal is now ripe for resolution.

## B. Factual Background

### 1. *Relevant Treatment History*

#### a. Physical Impairments

On May 24, 2006, Dr. O.D. Raulston examined Rayford at the Medical Testing and Examination Center of Fort Worth ("MEDTEX") for occasional lower back pain and bilateral knee and leg pain. Tr. 141-44. Rayford reported that her leg pain was consistently present and exacerbated by prolonged standing, and her back pain was present daily. Tr. 141. Rayford informed Dr. Raulston that her daily activities were limited, and most of her time was spent sitting in a chair. Tr. 142. Dr. Raulston noted that Rayford exhibited mild to moderate pain behavior, and he ultimately diagnosed her with chronic lower back pain and moderate swelling of the right lower extremity most likely caused by significant venous insufficiency. Tr. 143.

On June 12, 2006, Rayford entered the emergency room of John Peter Smith Hospital ("JPS") for swelling in her right lower extremity. Tr. 228. Rayford was diagnosed with right lower-extremity swelling and lower back pain. Tr. 147-54.

On July 8, 2006, Rayford was again admitted to JPS for swelling. Tr. 216. She reported moderately severe swelling in her right leg, exacerbated by walking, and constant pain that invariably worsens. Tr. 216. She also reported swelling in her foot, ankle, and calf. Tr. 217. Rayford was diagnosed with deep venous thrombosis in the right lower extremity, and a CT scan identified a ten-centimeter mass in her pelvis as the source of the thrombosis. Tr. 237.

On July 18, Rayford underwent an exploratory laparotomy, enterolysis, and a left salpingo-oophorectomy. Tr. 211. These surgical procedures indicated "a complex mass with ovary and cyst extending the left pelvis under the surface of the sigmoid colon." Tr. 211. Rayford's post-surgical discharge diagnosis included deep venous thrombosis with the right external iliac vein extending to the common and internal iliac vein, serous cystadenoma of the left ovary, vaginal cyst, hypertension, and asthma. Tr. 156. Following her hospital stay, Rayford presented herself for several follow-up appointments at JPS. Tr. 162-90.

On October 21, 2007, Rayford entered the emergency room with reports of right lower quadrant pain and emesis, and was admitted to the hospital on the same

day for further review.  Tr. 386.  At that time, Rayford was diagnosed with complex pelvic mass, hypertension, asthma, and bipolar disorder.  Tr. 386.

In her disability report, Rayford indicates that the pain in her lower extremities limits her ability to work.  Tr. 96.  She allegedly has leg pain for approximately six hours per day, Tr. 112, and difficulty walking.  Tr. 96.  She claims that her leg problems limit her ability to do basic housework.  Tr. 112.  She also contends that she cannot care for her personal needs because of the pain in her legs, which persists even after taking medication.  Tr. 120.  According to Rayford, she can stand for only fifteen minutes before experiencing pain, and can walk for about the same time before needing a break.  Tr. 33.

b. <u>Mental Impairments</u>

On December 11, 2006, Rayford sought treatment at the Mental Health Mental Retardation of Tarrant County ("MHMR") for depressed mood, decreased sleep, mood swings, feelings of worthlessness, and hopelessness.  Tr. 316-17.  She reported weakness in her tolerance for stress, social systems, and insight, Tr. 320, in addition to experiencing problems with memory, concentration, and lack of sleeping.  Tr. 317.  Throughout 2007, Rayford attended MHMR for mental health assessments, and she was ultimately diagnosed with bipolar disorder and other mental impairments since 2007.  Tr. 279.

On February 21, 2007, Rayford received a Global Assessment Functioning ("GAF") score of 40, and she was diagnosed with bipolar disorder and cocaine dependence in full remission. Tr. 282. Rayford also received a score of 26 on the Total Brief Bipolar Disorder Symptom Scale ("BDSS"), which is scaled from 10 to 70, and reportedly had moderately severe hostility, depression, and unusual thought content. Tr. 279-81. Rayford was consistently diagnosed with bipolar disorder throughout 2007. *See, e.g.*, Tr. 266, 299, 334.

During that year, Rayford regularly attended the MHMR Adult Outpatient Services Program for training to help her improve her coping skills and problem-solving abilities. *E.g.*, Tr. 246, 269, 338-44. Rayford's various assessments at MHMR report a GAF score ranging between 40 and 50, and she was consistently described as having a constricted or blunted affect. *See, e.g.*, Tr. 282, 331, 334. Moreover, she frequently reported being irritable, depressed, nervous, helpless, and anxious. *See, e.g.*, Tr. 283, 304, 317, 345, 377. She also reported feeling isolated, having problems socializing, and having auditory and visual hallucinations. Tr. 312-13. On November 27, 2007, a BDSS ranks Rayford's motor hyperactivity and emotional withdrawal as moderately severe, her depression as a severe, and her anxiety as extremely severe. Tr. 385.

## 2. *The ALJ's Decision*

On April 18, 2008, the ALJ held a hearing in Fort Worth, Texas, during which Rayford and Todd Harden, a vocational expert, appeared and testified. Tr. 17. At the time of the hearing, Rayford was 43 years old with a tenth grade education and past relevant work experience as a housekeeping cleaner and home healthcare aide. Tr. 23. At the commencement of the hearing, the ALJ asked Rayford if she wished to proceed without a representative or an attorney, to which she responded, "Go ahead and proceed without them." Tr. 27. When asked, "You want to go ahead without them? Is that right?", Rayford answered, "Yes, sir." Tr. 27. The ALJ accepted this as a waiver of counsel and began the proceeding. Tr. 27-28.

On May 30, 2008, the ALJ issued a decision finding Rayford not disabled. Tr. 14-24. In making that determination, he analyzed Rayford's claim under the five-step sequential disability-evaluation process articulated in 20 C.F.R. § 404.1520(a). Tr. 18. At step one, he found that Rayford had not engaged in substantial gainful activity since the alleged onset of her disability, November 1, 2004. Tr. 19. At step two, he determined that Rayford had the following "severe" impairments: left leg pain, asthma, and obesity. Tr. 19. At step three, the ALJ concluded that Rayford did not have a medically-determinable impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 19. At step four, he

classified Rayford as a "younger" individual, with limited formal education and a semi-skilled work history, who can no longer perform any of her past relevant work. Tr. 22-23. Finally, at step five, the ALJ found Rayford capable of performing other work existing in significant numbers in the national economy, including work as a patcher, callout operator, or final assembler. Tr. 23. On that basis, the ALJ deemed Rayford not disabled at any relevant time through the date of his decision. Tr. 24.

## II. ANALYSIS

### A. Standard of Review

Under the SSA, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and [supplemental security income]." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120 (1995). A claimant must prove that she is disabled to be entitled to either or both of those benefits. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1) (2011). First, the claimant must not be presently engaged in substantial gainful activity, *id.* §§ 404.1520(b), 416.920(b), -- that is, work involving the use of significant physical or mental abilities for pay or profit. *Id.* § 416.972(a)-(b). Second, the claimant must have an impairment or combination of impairments that is "severe." *Id.* §§ 404.1520(c), 416.920(c). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if a claimant's medical status alone does not justify a finding of disability, her impairment must preclude her return to past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). Finally, the impairment must prevent the claimant from performing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experience. *Id.* §§ 404.1520(g), 416.920(g); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999).

Under the first four steps of the inquiry, the burden lies with the claimant to prove her disability. *Leggett*, 67 F.3d at 564; *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is or is not disabled. *Leggett*, 67 F.3d at 564. If the claimant satisfies her responsibility at steps one through four, the burden

shifts to the Commissioner to show the existence of other gainful employment that the claimant is capable of performing despite her impairments. *Id.* Once such a showing is made, the burden of proof shifts back to the claimant to rebut this claim. *Crowley*, 197 F.3d at 198; *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). This court may not reweigh the evidence, retry the issues, or substitute its own judgment for that of the Commissioner; judicial review is limited to the narrow question of whether substantial evidence exists in the record to support the decision. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

B. Issues Presented

Rayford raises the following issues:

1. Whether Rayford's waiver of counsel was invalid and prejudicial because the ALJ and the Social Security Administration failed to properly apprise her of her rights.

2. Whether the ALJ erred by not applying the standard articulated in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), to determine if Rayford's alleged mental impairments are severe.

## C. Waiver and Prejudice

A claimant has a statutory right to counsel at a social security hearing. 42 U.S.C. § 406; *Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003). She may, however, waive this right if given sufficient information to decide intelligently whether to retain counsel or proceed *pro se*. *Norden v. Barnhart*, 77 F. App'x 221, 223 (5th Cir. 2003) (citing *Clark v. Schweiker*, 652 F.2d 399, 403-04 (5th Cir.1981)). "Sufficient information" includes explanations of the possibility of free counsel, a contingency agreement, and the limitation on attorney's fees to 25% of past due benefits awarded. *Id.* "An ALJ should provide pre-hearing written notification of a claimant's right to counsel, and also ascertain at the hearing whether the claimant had a 'meaningful opportunity to secure counsel and, if not, consider adjourning the hearing to provide that opportunity.'" *Ivanova v. Astrue*, No. 3:09-CV-2349-K (BH), 2010 WL 2228511, at *8 (N.D. Tex. May 20, 2010) (Ramirez, M.J.) (quoting *Freeman-Park v. Barnhart*, 435 F. Supp. 2d 597, 601 (E.D. Tex. 2006)). Pre-hearing written notification alone, however, may be inadequate. *Stansel v. Shalala*, No. 94-50120, 1994 WL 684761, at *1 (5th Cir. Nov. 18, 1994) (citing *Benson v. Schweiker*, 652 F.2d 406, 408 (5th Cir. 1981)).

On the record, the court cannot say that Rayford knowingly and intelligently waived her right to counsel. Prior to the hearing, Rayford received written notice of her right to counsel. Tr. 48, 57, 60. And the record shows that at one point she enlisted the assistance of an attorney, Mr. Christopher A. Crawford ("Crawford"). Tr. 61. But, ten days before the hearing, Crawford provided notice to the administrative court of his withdrawal from the case. Tr. 74. The record is silent on why he withdrew. When asked if she had an attorney during the hearing, Rayford responded, somewhat inaudibly, that she spoke to someone named "Davis . . . about like six months [ago]." Tr. 27. At this point, the ALJ asked if Rayford tried to contact him. Tr. 27. Rayford answered, "I lost that number. I had a little card, a business card and there's I lost the number." Tr. 27. The ALJ then asked if Rayford wanted time to get her representative "onboard" for the hearing, and Rayford instructed the ALJ to "[g]o ahead and proceed without them." Tr. 27.

Because the ALJ made only a cursory inquiry into why Rayford was without counsel and the record does not indicate why Crawford withdrew from the case, the court can only speculate about the possible reasons why Rayford decided to proceed *pro se*. One possible explanation -- which might support a finding of knowing and intelligent waiver -- is that Rayford simply wanted to proceed on her own. On the other hand, Rayford might have decided to proceed without counsel because she was not fully aware of the availability of free or contingency-based counsel and thought

that she could not afford another attorney after Crawford withdrew. If that were the case, Rayford's waiver of counsel would not be valid. See *Guerin v. Shalala*, No. 93-8530, 1994 WL 395077, at *2 (5th Cir. June 28, 1994). Since the record is unclear, the court will assume that Rayford did not make a knowing and voluntary waiver of counsel. *Id.*

A flawed waiver of counsel requires remand, however, only when the record reveals evidentiary gaps that result in unfairness or clear prejudice. *Id.*; *Brock v. Chater*, 84 F.3d 726, 729 n.1 (5th Cir. 1996). The claimant must show that counsel "could and would have adduced evidence that might have altered the result." *Brock*, 84 F.3d at 728.

Here, Rayford argues, among other things, that counsel would have adduced (1) a mental RFC assessment from Rayford's treating physicians to supplement the record, which includes only a physical RFC assessment submitted by a non-treating State-agency physician; (2) a consultative psychological examination because the only examination in the record relates to Rayford's physical impairments and Rayford was formally diagnosed with bipolar disorder in early 2007, after the completion of the consultative exam in the record; and (3) evidence, on cross-examination of the vocational expert, related to the effect that Rayford's limitations would have on her ability to perform work in the national economy. Plaintiff's Brief on Review of the Decision of the Commissioner of Social Security ("Rayford's Brief") at 13-15.

Notwithstanding the Commissioner's position that "plenty of claimants have a representative and still do not provide consultative examinations and/or RFC forms," Defendant's Brief at 9, the court finds that Rayford has satisfied her burden to show prejudice from her invalid waiver of counsel by identifying significant evidentiary gaps which if filled might have altered the AL's decision. See *Ivanova*, 2010 WL 2228511, at *9; *Pullam v. Astrue*, No. 06-CV-1771, 2008 WL 4000538, at *4 (W.D. La. July 1, 2008); *Gullett v. Chater*, 973 F. Supp. 614, 622 (E.D. Tex. 1997).

The ALJ refused to accept Rayford's claim of severe mental impairment because her diagnosis "was based primarily on her own report of symptoms and medical history . . ., [the record contained] no evidence of substantial memory or concentration deficit or decompensation, and her demeanor at the hearing was not persuasive as to the existence of a severe mental impairment." Tr. 21. The addition of mental assessments and psychological examinations to the record would address the ALJ's concerns: offering objective evidence to support or refute Rayford's allegations. See *Davis v. Califano*, 599 F.2d 1324, 1327 (5th Cir. 1979); see also *Ware v. Schweiker*, 651 F.2d 408, 414 (5th Cir. 1981) ("The hearing examiner has the duty, accentuated in the absence of counsel, . . . to develop the facts fully and fairly and to probe conscientiously for all of the relevant information."), *cert. denied*, 455 U.S. 912 (1982). Moreover, a finding of severe mental impairment at step two of the sequential analysis would have required the ALJ to consider how that impairment

affects Rayford's ability to perform work in the national economy. 20 CFR § 404.1520(g), 416.920(g). These unfilled evidentiary gaps constitute reversible error.

D.  Severity Standard

Having concluded that the ALJ erred by not properly admonishing Rayford of her right to counsel, the court need not address Rayford's argument that the ALJ failed to apply the standard articulated in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), to determine if Rayford's alleged mental impairments were severe. The court writes only to note that the Fifth Circuit has been very clear that courts must "assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion [*Stone*] or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used. Unless the correct standard is used, the claim must be remanded to the Secretary for reconsideration." *Id.* at 1106.

It is undisputed that the ALJ did not reference *Stone* in his decision. Rayford's Brief at 17; Defendant's Brief at 9. Nor did the ALJ's decision reference any other Fifth Circuit opinion "of the same effect" as *Stone*, or include an "express statement" that the decision was based on the Fifth Circuit's construction of 20 C.F.R. § 404.1520(c). Indeed, the ALJ simply stated that "an impairment is 'not severe' if it has no more than a minimal effect on the individual's ability to perform basic work

functions." Tr. 19. The *Stone* standard, however, does not allow for "minimal" interference with an individual's ability to work; it permits only a "minimal" effect on the individual. *Stone*, 752 F.2d at 1101 ("[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."). With this in mind, the court cautions the ALJ on remand to adhere to the dictates of *Stone*.

## III. CONCLUSION

For the reasons stated above, the decision of the Administrative Law Judge is **REVERSED** and the case is **REMANDED** for reconsideration.

Within fourteen days of this date, counsel for Rayford shall submit a proposed form of judgment conforming to this memorandum opinion and order.

**SO ORDERED**.

July 29, 2011.

*[signature: A. Joe Fish]*

**A. JOE FISH**
**Senior United States District Judge**